I'm Jed M. Kahn of Latham & Watkins, appearing as specially appointed pro bono counsel on behalf of the petitioners Jesus and Angelica Mendoza. I note for the record that the petitioners and their children are here and present in the courtroom as well. I'd like to reserve three minutes for rebuttal and I'll be mindful of the time. Let me begin with the due process claims. The immigration judge in this case did something remarkable. He determined that petitioners had roots and ties in Mexico because they attend a Spanish-speaking Catholic church in Los Angeles. Primarily on the basis of this fact alone, he ultimately denied petitioners cancellation of removal relief. He was clearly biased to petitioners. He based his decision in large part on petitioners' religious and ethnic heritage. Now this is unacceptable. An alien is entitled to the same constitutional protections as a United States citizen. Pardon me, counsel. This is an appeal from a BIA's finding, denying cancellation of removal, based on an IJ's finding, which under Romero-Torres we found to be discretionary. The petitioners have two children ages nine and five, both of whom are healthy. Parents who are 85 and 79, who luckily have eight children, four of them living in the United States, and the judge made a discretionary finding that there was no extreme and unusual hardship. Now, isn't that the issue before us, rather than whether the judge made some or had some evidence before him which you think he relied upon? Well, Your Honor, that's an issue before this Court. The panel asked us to brief the issue of whether the judge's determination as to roots and ties constituted a disputed fact finding. But under the Real ID Act, it's a constitutional fact. What do roots and ties have to do with it? They're removable, right? You stipulate to that. That's correct, Your Honor. If they're here as, whether you call them undocumented aliens or whether you call them illegal aliens, they're removable unless you can cancel the removal because of extreme hardship to a U.S. citizen child or other parent. Well, fortunately, Your Honor, we have the Real ID Act, which explicitly preserves this Court's jurisdiction for constitutional claims. And the constitutional claim that you're making is that the IJ exhibited illegal bias against these people by pointing out that they did have roots in Mexico because they attended a church. Suppose he's wrong. Whether they have roots in Mexico or not is irrelevant, isn't it? Absolutely not, Your Honor. Roots and ties is a factor that the Court analyzes with respect to the cancellation or removal analysis. It's a key factor. In fact, it was a dispositive factor. And there was overwhelming evidence in this case, Your Honor, that the petitioners who've lived in this country for two decades have two U.S. citizen children who've never even been to Mexico, who own their own cleaning business that they built from scratch in L.A., who bought a home in L.A., who are actively engaged in their religious and local communities, and who provide for their ailing legal permanent resident parents, that despite all of those facts, the IJ still cherry-picked the single fact of their membership in a Spanish-speaking church in Los Angeles and held, well, those amount to ties, roots and ties in Mexico. That's a key factor, Your Honor. And this Court is uniquely situated to... Are you saying to me that if they do not have roots and ties in Mexico, then it would be an error of law for the IJ to find that there's no extreme hardship? What I'm saying is the error is bias. And Reyes-Melendez has made that point clear, that a due process violation can be based on bias, a potential to affect the outcome of the proceeding, a potential. And in Reyes-Melendez, the Court found that there was bias exhibited by the immigration judge. In the same way, Your Honor, the prejudice here, albeit concentrated in that one instance, in those two sentences of the opinion, is equally palpable and severe as in Reyes-Melendez. And this Court does retain jurisdiction to review that due process violation. All we ask this Court to do is to remand this matter to an immigration judge so that the petitioners can have a fair hearing, where they're not judged on the basis of their religious or ethnic heritage. And this Court does retain jurisdiction. This is not a matter that is encompassed by Romero-Torres in that context, although I can address that issue as well. I believe this is a disputed fact finding. In Romero-Torres, the issue of discretion was reserved to the ultimate discretionary conclusion, and that is whether there was exceptional and extremely unusual hardship. But the factual determination that undergirded that analysis, which is roots and ties, that factual determination is in dispute. And Romero-Torres, in footnote 5, as this Court asked us to brief, points out that the decision does not apply to disputed fact findings. This Court hasn't resolved that issue of whether the Real ID Act encompasses disputed or undisputed fact findings. But I submit that doesn't matter. A constitutional violation, the Court can always review. Indeed, it must review. I'm trying to get my mind around what you claim to be a constitutional violation. You say that the mere fact that the IJ mentioned that these people belong to a Spanish-speaking church shows that IJ made a mistake in thinking that they had ties in Mexico. Your Honor, I don't believe it's a mistake. I believe it's actual bias. There's not a single case cited in the government's papers where the BIA or a court relies on religion as a factor and basis to determine roots and ties. It's just not an acceptable constitutionally permissible factor. The mere fact that they attend a Spanish-speaking church in Los Angeles, how can that establish roots and ties to Mexico? There's overwhelming evidence that these Petitioners are – Are you forwarding the proposition that they can't be deported unless the government can show they have roots and ties to Mexico? No. What I'm saying, Your Honor, is a factor in the analysis to determine exceptional and extremely unusual hardship is their roots and ties. To their children. Or to themselves, to their legally lawful permanent residence. That means free hardship to their children by them being sent to Mexico. Isn't that right? Absolutely, Your Honor. But what does – But due process is a procedural – Talk me through why mentioning of the church shows bias in the finding of roots and ties of the children. The children don't have any roots and ties in Mexico. They were born here. They're American citizens. Any reference to a church would be bias. Is that your theory? No, it's not my theory. Suppose it was a Presbyterian church or a Masonic lodge or something like that. Or suppose it was just a lodge. They belong to a Spanish-speaking lodge. Would that be bias? Well, Your Honor, to the extent that you use the – I.J. factored in the language of the Petitioners and their religion, I believe that that combination – using that combination to determine that someone has roots and ties in their native land, that standard is rather remarkable. Why would language be a bias factor? Your Honor, the mere fact that a Petitioner speaks their own native language, even though they've successfully integrated into this country at Sunday in church, by that standard, any Mexican-American U.S. citizen in this country attending mass and speaking Spanish, the I.J. would consider they have no roots and ties to the U.S. It was that single fact, that one fact, that shaped the analysis and ultimately affected this outcome. It's explicit in the immigration judge's decision. And that's sufficient. A mere potential to affect the proceeding, actual bias on the part of the I.J., and I submit to answer Judge Bea's point, is that the issue of the nexus between the exceptional and unusual hardship to the U.S. children and the due process violation, there isn't a required nexus. A due process violation is a procedural point. The I.J. should not factor and use religion as a basis to determine roots and ties. That's impermissible. And that's simply what we challenge on appeal. Your Honor, I would like to reserve my last minute for rebuttal, if I may. Please proceed. Good morning. May it please the Court, Kelly Walls for the Respondent, the Attorney General. The only issue in this case is whether the Court has jurisdiction to review the agency's finding that petitioners failed to establish exceptional and extremely unusual hardship to their qualifying relatives. Although petitioners attempt to create jurisdiction by casting this as a factual dispute or constitutional claim, this case presents a typical cancellation case, where the hardship likely to be experienced by the qualifying relatives simply does not rise to the level of extreme and exceptionally unusual. Therefore, the petitioner... Counsel? Counsel, Judge Gould, I've got a question for you. Yes. So I understand that we don't have jurisdiction to review a discretionary decision on the hardship standard. But we, of course, do have jurisdiction to review if there's a due process violation, if the I.J. was demonstrably exhibiting bias. I suppose we could give relief and say it's got to go back to another I.J. to apply the discretionary standard. So to me, the crux of this is, does what the I.J. said about a Spanish-speaking church, does that or does that not show some significant bias of the I.J.? It absolutely does not, Your Honor. The language and religion of the petitioners, as well as their children, are appropriately considered in the hardship analysis, as are educational opportunities, work opportunities, basically anything that could impact on the petitioner's children's lives, because as Judge Bea pointed out, the hardship to be considered is that to the United States citizen children as the qualifying relatives. So the fact that they attend Spanish-speaking mass here in the United States and would be able to do so upon return to Mexico is simply an appropriate part of the hardship analysis. It does not in any way reflect bias on the part of the I.J. In fact, if reviewing the entire record... Well, with a question, how does their ability to speak Spanish and understand it at a mass in Mexico, what does that have to do with hardship that the children might face here? Aren't we looking... We're looking for whether there's hardship to the U.S. citizen children or any other relative who's in the U.S.? Exactly, and I believe the testimony was that the family attends the mass together, and so the immigration judge said the children would not have to give up their religious participation because they are attending Spanish-speaking mass here in the United States. Their language abilities, as far as Spanish goes, are definitely part of the hardship analysis because they are returning to a country or, in the children's case, would be going for the first time to a country where Spanish is the predominant language. The only reason Spanish was brought up is because that is the language spoken in Mexico. If we were dealing with France, we'd be talking about whether or not they could speak French. This didn't demonstrate bias against Spanish speakers or Catholics or people of Mexican nationality. This is the analysis that must be engaged in, in determining that if these children go to Mexico upon their parents' removal, will they suffer exceptional, extremely unusual hardship? These are the very factors the board has considered in the matter of Andazola, the matter of Racinas, and the matter of Montreal. This discussion of roots and ties is somewhat perplexing to me because it essentially just seems to be shorthand for the immigration judge's very lengthy analysis of the hardship that the children would suffer based on their parents' opportunities in Mexico, family they have there, the church participation, and the language. This didn't demonstrate bias. In fact, a further review of the transcript reveals that the immigration judge was quite complimentary of the petitioners, calling them admirable for taking care of Mrs. Mendoza's parents. He said that at least on three or four occasions he complimented the Mendozas on their actions here in the United States. This is not the kind of case where we look and find inappropriate comments by the immigration judge. So quite simply, this bias claim is not a colorable claim over which the court should find that it has jurisdiction to review the hardship determination. Do you find this analysis in other cases where there is reference to both religion and language? Oh, absolutely. That is an important aspect of someone's, you know, kind of sense of well-being and their ability to provide for their children. They are going to look at what is available in the country of return. It's a pretty routine. I was just going to say on the question that my colleagues ask, are there precedents of the Ninth Circuit? Do we have precedents from us or from some other circuit court that says this is an appropriate comment that it doesn't show bias? You know, I don't, I did not come across any. I think because religion and language are, as a matter of routine, considered in the hardship analysis. As far as, in this case, if the children were not able to attend church and were going to a country that had a language that they knew nothing about, that would affect the hardship analysis. That would affect what they would suffer if they returned to that country. So I think the reason we don't have any allegations or precedent on bias in this case is simply because it hasn't, I don't think it's been raised. It's so routinely considered in the hardship analysis. Okay, well, thanks for clarifying. And Judge Hart, I didn't mean to interrupt your question. I was sorry. I didn't understand if the government was arguing that this is routinely accepted in circuit precedent, or if the government was arguing this is a routine practice of IJs that happens all the time. But it sounds to me like it may be somewhat unprecedented in terms of our precedent. So I personally am not persuaded it's not a colorable claim. It may be a winning claim or a losing claim, but I think it's a claim that can be advocated by your opponent. So I hope you'll stay focused on, you know, whether the evidence shows bias. I think as I've stated, they really have not, Petitioner's counsel has not identified any specific comment that would show bias. The immigration judge identified that the petitioners speak Spanish and attend Catholic mass. That's an observation of fact. He also took judicial notice that Spanish is the predominant language in Mexico and that it is. Not only the petitioners speak Spanish and attend Spanish-speaking mass, but the U.S. citizens who will go with them when they are removed speak Spanish and attend Catholic mass. You're correct, and that's even more important. So they will feel, as to that issue, somewhat more at home in Mexico than they would be if they were deported to Iceland. Exactly, exactly. These observations of fact in taking judicial notice that Mexico is a Spanish-speaking and predominantly Christian country don't reflect bias. Those are statements of fact. The remaining transcript shows no evidence of bias on the part of the immigration judge. In order to show bias, they must demonstrate some sort of extrajudicial source of bias against the petitioners or some deep-seated antagonism, as the Supreme Court explained in Litkey. Here, there simply is no evidence of that. There were observations of fact applied to the law of the board under Andazola, Monreal, and Racines, and it just simply was determined, as it is in many of these cases, that the hardship to the children does not rise to the level of exceptional and extremely unusual. Without having pointed to any actual statement of bias, I still contend that this is not a colorable claim. Likewise, the First Amendment claims are also without merit. The observation of language and religion did not in any way prohibit or punish the petitioners or their children for practicing their religion or speaking their language of choice. It's just far too attenuated to say that the cancellation requirements have any impact on their freedom of religion. And simply recasting these constitutional claims or, I'm sorry, recasting these abuse of discretion claims as constitutional claims does not provide an avenue for this court to exercise its jurisdiction. If there are no further questions, in short, because petitioners have failed to raise any colorable constitutional claim or question of law, this Court is without jurisdiction to review the hardship determination. Therefore, we respectfully request that the Court deny the petition for review. Thank you. Thank you. Mr. Kahn? Thank you, Your Honor. A few points. First and foremost, this is an unprecedented case, and not only is there no Ninth Circuit precedent that stands for the proposition that religion can be used as a factor or language can be used as a factor in the roots and ties analysis. There's not a single case. Are you saying that I.J. was showing prejudice against these petitioners by mentioning that they could speak Spanish and that they all go to church together, a church which they can also go to in Mexico? I am, Your Honor, because analysis is not roots and ties to Mexico. The analysis is roots and ties to this country, and the fact that they attend a Spanish-speaking church is manifestly irrelevant to that question. It's very relevant to show whether the children will feel at home in Mexico as opposed to Iceland. That's where you can take into account family ties. You can take into account language to a certain extent, but the BIA cases that government has cited, not a single case, not a single one in BIA precedent or Ninth Circuit authority  It's not one. It's not routine. In fact, the BIA doesn't have a single case on that. Do you think it would be relevant for the I.J. to comment that the people are Catholic if they were being deported to Saudi Arabia to show that they wouldn't be familiar and well-received in Saudi Arabia if they insisted on their Catholic heritage? Your Honor, that would be relevant, but the standard, again, recasts the standard. It's whether the petitioners and their children have roots and ties in this country, and he cherry-picked their membership in a church to say they have roots and ties in Mexico. That's not the standard. The standard is roots and ties to the U.S. How is one's religion and membership in a church or speaking their own native tongue relevant to analysis of roots and ties in this country? Immigrants who are United States citizens, they speak their own language. They cherish their culture. And cherishing your religious and ethnic heritage should not be used against you in a way to say you have no roots and ties in this country. He or she, the I.J., had not used the term roots and ties, but said in assessing the hardship to the U.S. citizens, we take note that they speak Spanish and they go to church in the United States with their parents, and similar churches exist in Mexico. That would have been all right. It probably would have, but that's not the analysis, Your Honor. The analysis is roots and ties. That's why this is a factual dispute, a factual determination on roots and ties, completely different from Romero-Torres. That is a key fact, a key factor in determining exceptional and extremely unusual hardship. There's only four factors. One of that is roots and ties to the U.S., and that was the basis for the entire decision. This is palpable. This is expressed in the decision. The fact that he was respectful and honored the petitioner's care for their parents, that doesn't mask from the perniciousness and the severity of this prejudice. It's fundamental. It's palpable that you can't use religion as a basis to say you don't have roots and ties in this country. We simply ask that the I.J. understand and do the analysis based on the factors the BIA has set forth, not a brand-new factor of religion and church membership. You're out of your time. Thank you very much. This matter is marked as submitted. We'll go to the next matter. The case of Techley v. Holder, the oral organism vacated. The next case is the case of Porter v. Ollison.
judges: Hart, Gould, Bea